Case number 19-5525, United States of America v. Cody Thomas. Argument not to exceed 15 minutes per side. Mr. Andrew Brandon, you may proceed for the appellant. Thank you, your honors, and may it please the court, my name is Andrew Brandon. I represent Cody Thomas. I've already reserved three minutes for rebuttal. Your honors, I want to start today by providing a bit of factual background that in this case is actually not in the record, but I think the court can take notice of it. And that is the fact that Cody Thomas is still in state custody. He has been denied parole for his second year of his three year state sentence. He should go back in, I believe, June for a parole hearing to determine if he'll have his third year in state custody. When he was denied parole after his second year? Or was it after his first year, meaning he had to serve his second year? That's correct. Okay. I can't remember the timing of when the federal sentencing occurred. Was the state parole board aware of the federal sentencing? It should have been, I believe that would have been in June of... So the federal sentencing would have been before... I remember there were some references in the federal sentencing of not knowing what the state parole board would do. So presumably it was before and presumably the parole board was aware. That's correct, your honor. Okay. And I bring that up to illustrate the moving target that the district court was shooting at in using consecutive rather than concurrent sentencing. And in not going along with the guideline, what is phrased as a mandate, that it shall impose concurrent sentences. But it's not really a mandate under case law, correct? That's correct. After Booker, that is certainly discretionary. However, it is phrased as an instruction to the court. And more importantly, it's one that the court needs to acknowledge in calculating in the first place, the guideline range and sort of understanding how it applies or explaining to, for meaningful appellate review even, how it applies. And that is sort of the lesson of the case of United States v. Brown, 2018 decision from the D.C. Circuit, which we've cited. And that case is really on all fours with where we find ourselves today. That case addressed the use of violence enhancement in the 2D1.1. This case addresses the in connection with enhancement in 2K2.1B6B. That case involved a decision where the court said over and over again that the judge said, I have plenty of discretion with regard to consecutive sentencing. The court clearly indicated that it was aware that he could make one of these choices. Here, the court actually said less about his discretion to use consecutive sentencing. But I think it's fair to say that the court was aware that it could do one or the other. Well, although it's true the court did not mention the particular provision that you're relying on, the court did accommodate the considerations of 3G1 by sentencing your client substantially below the federal guideline range, correct? I think it's probably more fair to say that the court accommodated my request for consideration in connection with enhancement and then used that as a means of crafting a consecutive sentence. But I don't believe that the court accommodated 5G1.3 because that provision doesn't really, I mean, it doesn't address that sort of accommodation. But I'm reading the transcript as though by sentencing below the guidelines, the court was trying to take into account, the consecutive sentence was intended to take into account the fact that there were really two different sorts of conduct, part and parcel of the whole sequence of events, but nevertheless, two different aspects of the conduct that were being addressed in the two sentencing. But he also tried to address the fact of the state sentence by going below the guidelines. Is that, do you think that's a fair, and then I'm going to be quiet because I've been doing too much questioning. I'll let my colleagues pick it up. No, Your Honor, I think that's a fair assessment of what the court was trying to do. And frankly, I think the court was trying to do even more than that. I think the court was trying to cut Mr. Thomas a break. I know. And so then, you know, the defendant kind of gets much of a break. Right. And so here we, I mean. But here we still are. And we don't really know what kind of break, if any. And in fact, there may be no break at all. What we know, for instance, is that he's not getting federal good time credit for the three, two, three years, however much he's going to spend in state custody. And so his sentence is not rolling in the BOP, and so he won't get any benefits he'll have there. And really that lack of knowledge is the concern that was being addressed by 5G 1.3 and that informs that presumption of concurrent sentencing. And again, it is certainly possible that we could go back and have the court say, yeah, I understood that, I understood that, and this is still what I want to do. But I would submit that there's evidence in the record. The court said it was page ID number 289. The court says, how bad does he have to mess up to not get released on December 24th of this year? And that was last year. And I said, I don't know, Your Honor, but I think that that's some evidence that the court was. And eventually Judge Richardson got around to saying, so we really don't know. And we all agreed on that. But I'm reading, I'm calling it 6364, that's the transcript page. The ID page is 331, 332. Isn't it very clear that he essentially says, you know, 84 is the bottom of the range, and that's kind of where he wants to be. And so he's going to give him, but instead of 84 flat out concurrent, I'm going to give you 48, assuming that 36 is the worst you can do. I don't know what Tennessee law in terms of whether he could violate something so that he would stay in prison even longer than that. But as opposed to an idea where the judge ignored something or didn't know what the parameters of 5G 1.3, even if he didn't cite it, he's clearly all on top of that. He knows what he's doing. And if it's simply a failure to say 5G 1.3, I mean, it may turn out to his detriment. Because the only detriment you've got is that if he serves out all three years and then goes into federal custody, he'll only be accruing 48 months worth of good time. Well, if he has good time, which we don't know either. Whereas if he had gotten it as a concurrent sentence, do you get good time while you're in state custody? Well, you would in concurrent sentencing. But I disagree with Your Honor that that's the only possible sort of prejudice in that I think. How can you get good time if you're in state custody rather than federal custody and the federal officials don't know a thing in the world about whether you're entitled to good time based on how you behave and perform in the state system? I don't have an answer for the court on that. But I believe that's correct. What's the source for the assertion that you get federal good time while you're in state custody if your sentence is running concurrently? The statute gives you 54 days for every year that you're in federal custody. And if you're in federal custody concurrent to the state, I mean, if the BOP is rolling that time, then you're in federal custody. Are you sure that you get good time? Your Honor, I am not 100% sure. Neither am I. It would be up to BOP to calculate it, though. I mean, they may have an internal policy that they don't calculate that as good time, or maybe they do. But you can't cite to a BOP manual at this point. I can't at this time, Your Honor. You might be. Well, we can work on it. And sometimes those BOP policies are somewhat opaque, which is another concern in this case, where, for instance, Mr. Thomas also had a probationary or parole violation sentence that was running concurrent with his state time for I believe it was one year. And it's far from certain that the BOP is going to give him credit for that as well. And these are just things that make this. So that was a federal parole? No, a state. Might that have been one reason why he was denied parole in the state system? It's possible. I mean, again, I think this is why we prefer concurrent time in the federal system. And I would just add one final point, and that is our sort of Roman numeral II arguments in this case, I think, are interesting in this context because I think they contribute to the problem here, which is that I truly believe that the district court in good faith was trying to cut Mr. Thomas a break. And I think that that break was sort of intended to subsume some of those other issues that weren't really addressed, that the court sort of said, okay, I see these. I'm not going to address these. That the whole of the break that Mr. Thomas was going to get was this 36 months that he may or may not get a break from. And I think the court believed that he would get, that he would end up in state custody for only that. I'm sorry. You called it your Roman numeral II arguments, and I'm looking at your table of contents, and I'm not seeing any Roman numeral II. You may be right, Your Honor. I apologize. The second set of arguments regarding procedural unreasonable. Failed to consider non-frivolous arguments for leniency, part 1B. All right. Thank you. The B arguments. I see I'm out of time. Thank you, Your Honors. Thank you. Good morning. Good morning. Thank you, Your Honors. May it please the Court. My name is Rob McGuire. I represent the United States. Your Honors, I'll pick up in the time that I have the threads that Mr. Brandon had as far as some of the issues that he raised in his argument. I'd like to start with the idea that Mr. Thomas may or may not get any benefit from the way the district court crafted the case. Respectfully, that just doesn't work out based on the math. It was agreed by all parties that Mr. Thomas, even though he was given a three-year sentence in state court, was not going to serve a full three years in the way that he might if he was given a 36-month sentence in federal court. It was necessarily going to be less than 36 months. Why is it necessarily if he keeps getting denied parole and if he's a bad guy in state prison? There are two answers to that, Your Honor. Just because he was denied parole the first time doesn't necessarily mean it. It doesn't mean it, but on the other hand means he may be. That's correct, Your Honor. Given the fact that he was convicted of an aggravated assault, that wouldn't necessarily be super surprising. But he will get some good and honor credit in state prison. More in state prison than he would in federal? I think it's slightly more, Your Honor, but it's pretty comparable. In the federal system, obviously, it's 54 days a year. In the state system, it might be a little bit more. If he was serving federal and state time concurrently, would he get whatever credits he would get from both systems at the same time? If he was serving a state – let me illustrate it this way or try to illustrate it this way, Your Honor. According to the Tennessee Department of Corrections, his sentence began in February of 2019. According to the latest pronouncement by the Tennessee Department of Corrections, he is set to finish that sentence in July of 2021. So obviously, that's less than three years because it would be – That's his presumptive release date. Yes, Your Honor. Not only that, but the way the Tennessee Department of Correction calculates sentences is they will give you that good and honor credit at the end of a completed term. It's either every month or every six months. But if they decide he's being neither good nor honorable, they could decide not to give it to him. That's correct, Your Honor. I'm just pushing you because you started out by saying we know it's going to be less than three years. And the answer is we don't know it. It may be very likely. I would submit, Your Honor, it's so likely to be almost an assurance. I can't imagine a scenario where he's not given at least some good and honor credit for some portion of that 31st sentence. He had to not mess up every day of the year. That's correct, Your Honor. That seems extraordinarily unlikely. And to answer the court's point, there's really no scenario in which, based on this sentence, he could serve more than 36 months. He would have to commit a new crime for which he'd be prosecuted in state court. So I think that there's really no scenario in which it's not going to be less than 36 months. Well, that's based on, it's not that it's an impossibility. That is just based on a probability, perhaps even a high probability, based on the knowledge you have about how state sentences usually operate in Tennessee. Correct? Respectfully, Your Honor, I would submit it's actually already occurred. Because since he's already been listed as having an outdate of July of 2021, which just by looking at the calendar is closer to present than three years from February of 2019, which would be February of 2022, he's already been given... That's a presumptive release date. It's not an actual release date. I would submit, Your Honor, that's correct. The actual release date would be the day he's released. But in terms of what Tennessee Department of Correction is telling us today, they've already factored in some level of good and honor credit. Otherwise, that release date would be later. No, ma'am. Once you've earned it, I would submit you've earned it. It's based on your past conduct, not future conduct. So if he had a period of six months of good conduct, the Tennessee Department of Corrections is going to go ahead and bake that in already. They're not going to take it away from him. They might not give it to him in the future depending on conduct that he commits today in custody. Are you sure about this? Yes, ma'am. I feel very confident about that. All right. Just for the court's background, I was a state prosecutor for 13 years and dealt with the Tennessee Department of Corrections regularly. That is not experience. It's a bit of an informed opinion. Yes, ma'am. So necessarily, the defendant would serve under the way the district court constructed the sentence less than the 84 to 82 months that the district court had arrived at as the appropriate sentence, which, as Judge Gibbons noted, was less than the guidelines by a significant degree. The court sort of started with a guideline range of 110 to 137 months and got all the way down to 84 months and then gave the defendant an additional benefit in the sense of I'm going to take this 36 months of state time off the 84-month sentence. And the court did run it consecutively, but that essentially lowers the amount of total incarceration time that the defendant will ultimately serve in both jurisdictions. Your Honor, I would like to just also briefly touch on some of the what Mr. Brandon described as his Roman numeral two arguments, but I think Judge Boggs noted it's really one B in the briefing. I would submit, Your Honor, that under Rita and Chavez Meza, the district court appropriately noted that he had discovered or he had reviewed those pleadings and was aware of the defendant's arguments on those issues. There really is nothing in Mr. Brandon's pleadings that was not then described in his appeal. In other words, there's nothing new in the appeal that was not sort of raised in the pleadings, which the court said multiple times the court had reviewed. The court just essentially decided against the defendant on those issues, and I would submit, Your Honor, that is both implicit in the sentence and then explicit to a degree that the court addressed some of these issues. And under the relevant case law, Your Honor, I would submit that that's appropriate. The rest of the issues that Mr. Brandon describes for the defendant, I would submit are conceptually straightforward under Simmons and therefore not necessarily requiring such an exposition about why the district court did or did not give a particular sentence or approach an argument in a particular way. I would submit, Your Honor, that the district court carefully considered the arguments of counsel, agreed with the majority of the appellant's arguments, granted a substantial variance, and that they adequately described the court's reasoning for any sentence. And any failure to do so on the district court's part was not error. Your Honor, unless the panel has additional questions, Your Honor, I would submit the rest of my time. Error will not. Thank you. Thank you, Your Honors. I can agree with Mr. McGuire's expertise on this subject. I would defer to him on certain matters regarding state sentencing. He's got a lot more experience in the state than I do. That said, I don't agree with him that that vision of how state custody would play out was agreed to by all the parties during the sentencing. I don't agree that we really had any sense of how any of that would play out, that this was something that everybody knew would happen and was baked into the understanding of the court. And again, I think the real error here is in failing to acknowledge that the guidelines presume concurrent sentencing in this case and that using consecutive sentencing to sort of cut Mr. Thomas a break was really shooting at a moving target that the guidelines try to discourage the court from doing. In reference to Mr. McGuire's statement that the court had already come all the way down to 84 months, I do note that that was through one guideline's departure regarding criminal history that was less than what we had asked for but that the government did not object to. And it was through one variance to sort of take off at two points for the guidelines have kind of a double effect on, in this case, a mildly adjusted shotgun barrel length. And the court agreed that that was... Adjusted as in sawed off? Adjusted as in somehow shortened in this case. But it was longer. The barrel length was shorter than it was supposed to be, but the total length was longer than it needed to be. And the court found that that was not a destructive device. And so I think that... But he found it was not like other destructive devices that would have been covered under the guideline. That's correct, yes. And so I guess I would just... The last point I would make is that Mr. McGuire's suggestion that the court had appropriately noted and reviewed all of my arguments. I am concerned about a system in which the court can simply sort of read off the subheadings to a sentencing memorandum, say, here are the arguments you've made. Is that right? Yes, Your Honor. Well, I'm not going to consider all of them. Or I have considered all of them, but I'm not going to say anything about all of them. I think that that is a concerning possibility. And in this case where, again, I would submit that the court was trying to cut a break and sort of subsuming all of those arguments into the break with consecutive sentencing, we do have a problem that requires reversal. Thank you, Your Honor. Counsel, can I say something? Sure. Mr. Brandon, I'm really not wanting to pick on you, but I've been wanting to say something to the bar generally, and you've given me the opportunity. We had our little colloquy about Roman 2, 1B. That was fine. I understood it. Your briefing was great. But when I went to your table of contents, I said, okay, he's talking about 1B. I'm going to look at 1B. The pages don't line up. And the reason I'm sure they don't line up, because I know you're a good lawyer, is somebody puts it in the computer, and then when you do the final version, the computer mispages it. So through you, and I say I'm really not picking on you, everybody here and everybody you talk to, read your briefs and get the paging right, because the computer has messed you up. And then it messes the judge up. Okay? That is the first email I will send. Okay. Thank you, Your Honor. Thank you, and the case is submitted.